# 22-4656(L), 22-4659, 22-4669, 22-4670, 22-4684, 22-4685

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
### *for the*
### 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

MOISES ORLANDO ZELAYA-VELIZ, SANTOS ERNESTO
GUTIERREZ CASTRO, JOSE ELIEZAR MOLINA-VELIZ,
LUIS ALBERTO GONZALES, GILBERTO MORALES,
JONATHAN RAFAEL ZELAYA-VELIZ,

*Defendants/Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# BRIEF OF APPELLANTS

JOSEPH D. KING
KING, CAMPBELL,
 PORETZ & MITCHELL PLLC
118 North Alfred Street
Alexandria, Virginia 22314
(703) 683-7070

CHRISTOPHER B. AMOLSCH
CHRISTOPHER AMOLSCH
12005 Sunrise Valley Drive,
 Suite 200
Reston, Virginia 20191
(703) 969-2214

*Counsel for Appellant*
 *M. Zelaya-Veliz*

*Counsel for Appellant*
 *J. Zelaya-Veliz*

*(Additional Counsel*
*Listed on the Inside Cover)*

CP COUNSEL PRESS • VA – (804) 648-3664

DONNA L. BIDERMAN
LAW OFFICE OF
DONNA L. BIDERMAN
4015 Chain Bridge Road,
 Suite 38
Fairfax, Virginia 22030
(703) 966-5434

*Counsel for Appellant
 Morales*

DONALD E. HARRIS
HARRIS LAW FIRM
2800 Eisenhower Avenue,
 Suite 220
Alexandria, Virginia 22314
(703) 224-8810

*Counsel for Appellant
 Molina-Veliz*

DWIGHT E. CRAWLEY
LAW OFFICE OF DWIGHT CRAWLEY
1300 I Street, NW, Suite 400e
Washington, DC 20005
(202) 580-9794

*Counsel for Appellant
 Castro*

JEFFREY D. ZIMMERMAN
JEFFREY ZIMMERMAN, PLLC
108 North Alfred Street
Alexandria, Virginia 22314
(703) 548-8911

*Counsel for Appellant
 Gonzales*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF APPELLATE JURISDICTION .................................................... 1

STATEMENT OF THE ISSUE PRESENTED ........................................................ 2

STATEMENT OF THE CASE.................................................................. 2

    The Facebook Warrants.................................................................. 7

    Facts Related to Defendant-Appellant Gutierrez-Castro............................... 14

SUMMARY OF ARGUMENT ................................................................ 15

   I.   THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE ................................................................. 15

   II.   INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT THE GUILTY VERDICTS ON ALL COUNTS AS TO DEFENDANT GUITIERREZ-CASTRO ............ 16

ARGUMENT ................................................................. 18

   I.   THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE WHERE THE SEARCH WARRANTS AUTHORIZING LAW ENFORCEMENT TO SEIZE AND REVIEW THE CONTENTS OF THE DEFENDANTS' FACEBOOK ACCOUNTS FOR LENGTHY PERIODS OF TIME OUTSIDE OF THE ALLEGED OFFENSE CONDUCT WERE ISSUED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AMENDMENT AND WERE FATALLY OVERBROAD, CONTRAVENING THE FOURTH AMENDMENT'S PARTICULARITY REQUIREMENT ................................................................. 18

      A.   STANDARD OF REVIEW .................................................... 18

      B.   THE WARRANTS LACKED PROBABLE CAUSE.............. 19

      C.   THE WARRANTS WERE FATALLY OVERBROAD..........25

i

D.    THE EXCLUSIONARY RULE'S GOOD FAITH
      EXCEPTION SHOULD BE REJECTED ...............................34

II.    INSUFFICIENT EVIDENCE WAS PRESENTED AT
       TRIAL TO SUPPORT THE GUILTY VERDICTS ON ALL
       COUNTS FOR DEFENDANT GUTIERREZ-CASTRO...................38

A.    STANDARD OF REVIEW .......................................38

B.    INSUFFICIENT EVIDENCE WAS PRESENTED TO
      PROVE DEFENDANT GUTIERREZ-CASTRO
      GUILTY ................................................................39

CONCLUSION ...................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Arizona v. Gant*,
   556 U.S. 332 (2009) ........................................................................25

*Eugene Burns v. United States*,
   235 A.3d 758 (D.C. 2020) ...................................................... 30, 31, 36

*Illinois v. Gates*,
   462 U.S. 213 (1983) ........................................................................15

*Kentucky v. King*,
   563 U.S. 452 (2011) ........................................................................25

*Marron v. United States*,
   275 U.S. 192 (1927) ........................................................................25

*Maryland v. Garrison*,
   489 U.S. 79 (1987) ........................................................................25

*Ortega-Rodriguez v. United States*,
   507 U.S. 234 (1993) ........................................................................39

*People v. Clarke*,
   73 Misc. 3d 1231(A), 156 N.Y.S.3d 830 (N.Y. Sup. Ct. 2021)...........................32

*Richardson v. State*,
   481 Md. 423, 282 A.3d 98 (2022) ........................................................31

*Riley v. California*,
   134 S. Ct. 2473 (2014) ...................................................... 16, 19, 20, 31

*Stanford v. Texas*,
   379 U.S. 476 (1965) ........................................................................19

*State v. Bock*,
   310 Or. App. 329, 485 P.3d 931 (2021) ................................................32

*State v. Smith*
   344 Conn. 229, 278 A.3d 481 (2022).....................................................31

*Steagald v. United States*,
   451 U.S. 204 (1981) ........................................................................20

*Taylor v. State*,
   260 A.3d 602 (Del. 2021) .................................................................32

*United States v. Anderson*,
   851 F.2d 727 (4th Cir. 1988) ....................................................... 20-21

*United States v. Beidler*,
   110 F.3d 1064 (4th Cir. 1997) ........................................................38

*United States v. Blake*,
   868 F.3d 960 (11th Cir. 2017) .............................................. 29, 36, 37

*United States v. Gomez*,
   652 F. Supp. 461 (E.D.N.Y. 1987) .................................................24

*United States v. Green*,
   599 F.3d 360 (4th Cir. 2010), *cert. denied*, 562 U.S. 913 ...............38

*United States v. Griffith*,
   867 F.3d 1265 (D.C. Cir. 2017) .................................................19, 25

*United States v. Hove*,
   848 F.2d 137 (9th Cir. 1988) .........................................................21

*United States v. Jason Mize*,
   No. 1:18-cr-74 (S.D. Ohio 2020) ..................................................35

*United States v. Lalor*,
   996 F.2d 1578 (4th Cir. 1993) .......................................................20

*United States v. Leary*,
   846 F.2d 592 (10th Cir. 1988) .......................................................37

*United States v. Leon*,
   468 U.S. 897 (1984) ........................................................ 18, 19, 37, 38

*United States v. Liburd*,
   No. 17-cr-296, 2018 WL 2709199 (E.D.N.Y. June 5, 2018) .............35

*United States v. Martin*,
   297 F.3d 1038 (11th Cir. 2002) .....................................................21

*United States v. Matthews*,
   591 F.3d 230 (4th Cir. 2009) .........................................................18

*United States v. McPhearson*,
   469 F.3d 518 (6th Cir. 2006) .........................................................21

iv

*United States v. Nolan*,
 199 F.3d 1180 (10th Cir. 1999) ............................................................21

*United States v. Penniegraft*,
 641 F.3d 566 (4th Cir. 2011) ...............................................................38

*United States v. Rios*,
 881 F. Supp. 772 (D. Conn. 1995) .......................................................23

*United States v. Rosario*,
 918 F. Supp. 524 (D.R.I. 1996) ............................................................24

*United States v. Schultz*,
 14 F.3d 1093 (6th Cir. 1994) ......................................................... 22, 23

*United States v. Shipp*,
 392 F. Supp. 3d 300 (E.D.N.Y. 2019) ............................................ *passim*

*United States v. Tairod Nathan Webster Pugh*,
 No. 15-cr-00116 (E.D.N.Y. Dec. 21, 2015) .........................................35

*United States v. Ulbricht*,
 858 F.3d 71 (2d Cir. 2017) ...................................................................28

*United States v. Westley*,
 No. 17-cr-171, 2018 WL 3448161 (D. Conn. July 17, 2018) ...............35

*United States v. Williams*,
 548 F.3d 311 (4th Cir. 2008) ...............................................................18

*United States v. Winn*,
 79 F. Supp. 3d 904 (S.D. Ill. 2015) ............................................... *passim*

*Zurcher v. Stanford Daily*,
 436 U.S. 547 (1978) ...................................................... 15, 20, 21

**Statutes & Other Authorities:**

U.S. Const. amend. IV ............................................................ *passim*

18 U.S.C. § 1591(a) ............................................................ 5, 16, 17

18 U.S.C. § 1591(b)(1)......................................................... 5, 16, 17

18 U.S.C. § 1591(c) ............................................................ 5, 16, 17

18 U.S.C. § 1592............................................................... 5, 17

18 U.S.C. § 1594(c) ................................................................. 5, 16

18 U.S.C. § 1951(a) ............................................................... 5, 8, 12

18 U.S.C. § 1951(b)(1) ........................................................... 5, 8, 12

18 U.S.C. § 1951(c) ............................................................... 5, 8, 12

18 U.S.C. § 1952 .................................................................... 8, 12

18 U.S.C. § 1959(a)(3) .............................................................. 8, 12

18 U.S.C. § 2421 .................................................................... 8, 12

18 U.S.C. § 2422(a) ................................................................. 8, 12

18 U.S.C. § 2423(a) ............................................................ 5, 8, 12, 17

18 U.S.C. § 2423(c) ....................................................................17

18 U.S.C. § 2423(e) .....................................................................5

18 U.S.C. § 3231 ........................................................................1

28 U.S.C. § 1291 ........................................................................1

Fed. R. Cr. P. 29 ............................................................ 14-15, 16, 39

## <u>STATEMENT OF APPELLATE JURISDICTION</u>

Defendant-Appellants Moises Zelaya-Veliz, Jose Eliezar Molina-Veliz, Santos Ernesto Gutierrez Castro, Luis Alberto Gonzales, Gilberto Morales, and Jonathan Rafael Zelaya-Veliz were charged with offenses against the United States thereby conferring jurisdiction pursuant to 18 U.S.C. § 3231. JA181-197. On November 10, 2022, the district court entered final judgment as to all defendants. JA1295-1342. Defendant-Appellants timely filed notices of appeal. JA1346-1352. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

<u>**STATEMENT OF THE ISSUE PRESENTED**</u>

I.   **WHETHER THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE WHERE THE DEFENDANTS ASSERTED THAT THE SEARCH WARRANTS AUTHORIZING LAW ENFORCEMENT TO SEIZE AND REVIEW THE CONTENTS OF THE DEFENDANTS' FACEBOOK ACCOUNTS FOR LENGTHY PERIODS OF TIME OUTSIDE OF THE ALLEGED OFFENSE CONDUCT WAS ISSUED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AMENDMENT AND WERE FATALLY OVERBROAD, CONTRAVENING THE FOURTH AMENDMENT'S PARTICULARITY REQUIREMENT**

II.  **WHETHER INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT THE GUILTY VERDICTS ON ALL COUNTS AS TO DEFENDANT GUITIERREZ-CASTRO**

<u>**STATEMENT OF THE CASE**</u>

In October 2020, the defendant-appellants were charged in a multi-count indictment with crimes alleging gang-related sexual exploitation of E.B., a minor, in the Eastern District of Virginia and Maryland. JA181-197. The offense conduct alleged in the indictment occurred between August 27, 2018 and October 11, 2018, the time period during which E.B. had absconded from a juvenile shelter care facility in Fairfax County. JA181-197.

In pretrial ligation, defendant-appellants Moises Zelaya-Veliz, Jose Eliezar Molina-Veliz, Luis Alberto Gonzales, Gilberto Morales, and Jonathan Rafael Zelaya-Veliz challenged a series of search warrants for their Facebook accounts on Fourth Amendment grounds. JA23-27. The warrants authorized the search and

2

seizure of a laundry list of data from long before and after the dates of the offense conduct for most of the defendants. JA1353-1592.[1] For defendant-appellant Luis Gonzalez, the warrant for his Facebook accounts had *no temporal limitations whatsoever*. JA1381. Defendants argued the warrants were issued without probable cause and were impermissibly over-broad in violation of the Warrant clause's particularity requirement. JA64-130, JA146-147.

The district court, in denying the motions to suppress Facebook evidence, erroneously found that the "magistrate judges [who issued the warrants] in each instance did have a substantial basis for concluding, as to each of the defendants, a sufficient nexus existed between the Facebook accounts to be searched and the crimes under investigation." JA114-115. The district court went on to conclude "[w]ith respect to particularity and overbreadth, there's no doubt that these warrants were broad, but the issue with respect to the particularity requirement is whether the warrant sufficiently identifies the items to be seized and not leave to the discretion of the executing officer whether an item is within the scope of the warrant." JA117. While the warrants permitted the seizure of broad categories of data, the district court

---

[1] The warrant for Defendant-Appellant Moises Zelaya-Veliz's Facebook account authorized the search and seizure of his Facebook account from January 1, 2018 (eight months prior to the offense conduct) to July 12, 2019 (the date of the warrant). JA1475. The warrants for Defendant-Appellants Jose Eliezar Molina-Veliz, Gilberto Morales, and Jonathan Rafael Zelaya-Veliz authorized the search and seizure of their Facebook accounts from January 1, 2018 to February 20, 2020 (the date of the warrant's issue). JA1492.

reasoned that "a warrant that describes items to be seized broadly may be valid if the description is as specific as the circumstances and the nature of the activity under investigation allows." JA117. The district court further found there was sufficient probable cause set forth in the warrant affidavits for apparently every category of data possessed by Facebook and sought by law enforcement. JA117-119. As to timeframe of data sought by the warrants, the district court referenced the ongoing investigation into a purported "broader criminal enterprise" and reasoned that the successive Facebook warrants narrowed the timeframe of records sought.[2] JA117-119. The district lastly found that even if the warrants lacked probable cause or were

---

[2] However, the Facebook warrants reveal that the agent switched warrant templates during the investigation, which *broadened* the warrant in several respects, including the time periods for which incriminating evidence was sought. The warrants issued on March 14, 2019, and June 5, 2019, using an apparently older Facebook warrant template, had no temporal limitations whatsoever and called for the disclosure of nine categories of information. JA1356-1358, JA1381-1384. The information requested in the warrants are identical and appear to be designed to capture the entirety of any Facebook account. The warrants issued on July 12, 2019, and February 20, 2020, used a different, updated template that had at least some temporal limitation—seeking Facebook records from January 1, 2018 (almost 9 months prior to the offense conduct) to the date of the warrants' issuance such that the successive warrant with the new template grabbed more data than the prior warrant. JA1475, JA1492. The updated templates sought an even greater laundry list of data (18 different categories) to include GPS location information for the entire timeframe of the warrant—every time a person logs on to Facebook, Facebook records the location from which the persons logs on. JA1476-1480, JA1494-1498. The new laundry list also required Facebook to disclose any accounts "forensically linked" (whatever that means) to the defendant-appellants' accounts through cookies, e-mail addresses, phone numbers, or other account information. JA1478, JA1496. That is, the FBI was trying request with both warrants everything "under the sun" as to regards to all Facebook accounts.

overbroad, the good faith exception to the Fourth Amendment's exclusionary rule would apply. JA121-122.

On June 1, 2022, the defendants proceeded to trial.[3] JA41. During trial, the United States introduced dozens of Facebook communications through its summary witness, Special Agent Jeremy Obie, which the defendants had challenged pretrial as obtained in violation of the Fourth Amendment. JA690-788, JA790-993, JA1109-1122. The Facebook communications were devastating evidence against all defendants as the communications consisted of real-time statements by the defendants demonstrating their participation in the charged offense conduct in addition to prejudicial communications indicating the defendants' involvement in or support of the MS-13 gang. JA1242-1257. The United States opening statement and closing arguments were replete references to the numerous exhibits of Facebook communications from the defendants' Facebook accounts that the United States

---

[3] Specifically, Defendant-Appellants Moises Zelaya-Veliz, Jose Eliezar Molina-Veliz, Santos Ernesto Gutierrez Castro, Luis Alberto Gonzales, and Jonathan Rafael Zelaya-Veliz proceeded to trial on three counts charging 1) Conspiracy to Sex Traffic a Minor Under Age 14 and via Force, Fraud and Coercion in violation of 18 USC § § 1951(a), (b)(1) and (c) & 1594(c), 2) Sex Trafficking a Minor Under Age 14 and via Force, Fraud, and Coercion in violation of 18 USC § § 1591(a), (b)(1), (c) & 2, and 3) Conspiracy to Transport a Minor with Intent to Engage in Criminal Sexual Activity in violation of 18 USC § § 2423(a) & (e). Defendant-Appellant Gilberto Morales proceeded to trial on two counts charging Conspiracy to Sex Traffic a Minor Under Age 14 and via Force, Fraud and Coercion in violation of 18 USC § § 1951(a), (b)(1) and (c) & 1594(c) and Sex Trafficking a Minor Under Age 14 and via Force, Fraud, and Coercion in violation of 18 USC § § 1591(a), (b)(1), (c) & 2. JA181.

argued was conclusive evidence of their guilt. JA207-208 (opening statement), JA1129-1153 (closing argument).

In its opening statement the government previewed to the jury: "You are going to see extensive messages from Facebook because it was on Facebook where the defendants discussed at length their plans." JA207. During the trial, the government introduced into evidence the Facebook profiles and numerous Facebook communications between the defendants. JA1242-1257. This amounted to over one hundred twenty-five (125) separate exhibits that formed the heart of the prosecution's case, reflecting much of the evidence at trial. JA1242-1257. In closing, the government told the jury that "when you look at the Facebook evidence that we have presented in this case, you will start to see what was really going on behind the scenes and what they were actually doing." JA1129. The government spent a significant amount of its closing emphasizing the numerous Facebook exhibits, *see* JA1129-1153, stating that they show "what was going on behind the scenes" and "who is involved with the sexual exploitation" alleged by the government. JA1134. According to the government, the Facebook messages "paint the story" the prosecution is trying to tell. JA1146.

On June 23, 2022, the jury returned verdicts of guilty on all counts for these defendants. JA1280. On November 10, 2022, the defendant-appellants were

6

sentenced to lengthy terms of imprisonment.[4] Defendants filed timely Notices of Appeal and this appeal follows. JA1343-1351.

Defendant-appellants respectfully submit that their convictions should be reversed as the trial court improperly denied defendant-appellants' motions to suppress warrants for their Facebook accounts, which provided the United States with critical evidence used against them at trial.

### The Facebook Warrants

During the government's investigation into the sex trafficking allegations, FBI Special Agent Jeremy Obie applied for and obtained a series of search warrants that sought a laundry list of different types of data from the defendants' Facebook accounts for broad time frames. JA1353, JA1380, JA1428, JA1481. The first search warrant was obtained on March 14, 2019, for five Facebook accounts, *without any temporal limitation*, for evidence related to sex trafficking of E.B. between August 27, 2018 and October 11, 2018. JA1353. The warrant set forth nine different categories of information to be disclosed by Facebook, including all communications related to the account and a host of other data types (pokes, likes, gifts, tags, and "other items"). JA1357. On June 5, 2019, Special Agent Obie

---

[4] Moises Zelaya-Veliz was sentenced to 264 months of incarceration (JA1295), Jose Eliezar Molina-Veliz to 180 months (JA1237), Santos Ernesto Gutierrez Castro to 180 months (JA1335), Luis Alberto Gonzales to 300 months (JA1319), Gilberto Morales to 180 months (JA1311), and Jonathan Rafael Zelaya-Veliz to 180 months (JA1303).

obtained a second search warrant for eight additional Facebook accounts, to include

accounts linked to defendant-appellant Luis Alberto Gonzales, also without any

temporal limitation. JA1380. The agent utilized the same template used in the March

14, 2019 warrant. JA1382. That is, the categories of data to be disclosed by Facebook

were identical to the March 14, 2019 warrant. JA1357, JA1382.

On July 12, 2019, Special Agent Obie obtained a third search warrant for ten

more Facebook accounts, including data from the Facebook account of defendant-

appellant Moises Zelaya-Veliz's. JA1428. This warrant was based on a different and

more comprehensive template, which requested a broader array of Facebook records

than the two previous warrants issued in the case.[5] While the warrant contained a

temporal limitation requiring the disclosure of Facebook account information from

January 1, 2018 (almost 9 months before the offense conduct) to the date of the

warrant, it commanded that Facebook disclose 18 different categories of data to

include "all check-ins and location information," which would include GPS location

data related to the accounts for the entire 18-plus month period.[6] JA1475-1480. On

February 20, 2020, Agent Obie obtained a fourth search warrant for 22 additional

Facebook accounts, including the accounts of the remaining defendant-appellants,

---

[5] *See* JA1430, citing violations of 18 USC § § 1951(a), (b)(1) and (c), 18 USC §
2421, 18 USC § 2422(a), 18 USC § 2423(a), 18 USC § 1952, and 18 USC §
1959(a)(3).

[6] When a person logs into a Facebook account, Facebook creates a GPS record noting
from where the account was accessed.

from January 1, 2018, to the date of the warrant. This warrant sought disclosure from Facebook for the same 18 data categories of information as the July 12, 2019 warrant. JA1481-1489.

The following table summarizes the warrants:

| FACEBOOK ACCOUNT WARRANTS FOR OFFENSE CONDUCT OCCURRING BETWEEN AUGUST 27, 2018 and OCTOBER 11, 2018 | | | |
|---|---|---|---|
| Date of Issuance | Number of Accounts | Limitation on Data Type Sought | Temporal Limitation |
| March 14, 2019 (JA1353) | 5 | Laundry list of data set forth in the warrant | None |
| June 5, 2019 (JA1380) | 8 (including Facebook accounts linked to defendant-appellant Luis Gonzales) | Same | None |
| July 12, 2019 (JA1428) | 10 (including Facebook account of defendant-appellant Moises Zelaya-Veliz) | Augmented laundry list of data set forth in the warrant | January 1, 2018 to July 12, 2019 |

| FACEBOOK ACCOUNT WARRANTS FOR OFFENSE CONDUCT OCCURRING BETWEEN AUGUST 27, 2018 and OCTOBER 11, 2018 | | | |
|---|---|---|---|
| February 20, 2020 (JA1481) | 22 (including Facebook accounts of Jose Eliezar Molina-Veliz, Santos Ernesto Gutierrez , Luis Alberto Gonzales, and Jonathan Rafael Zelaya-Veliz) | Same | January 1, 2018 to February 20, 2020 |

The particular categories of information requested by all the warrants demonstrate the massive breadth of information sought. The categories of information required to be disclosed by Facebook in the July 12, 2019, and February 20, 2020, warrants are:

(a) All contact and personal identifying information including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions, and answers, physical address (including city state and zip code), telephone numbers, screen names, websites, device identifiers, and other personal identifiers;

 (b) All activity logs for the account and all other documents showing the users posts and other-Facebook activities;

(c) All photos uploaded by that username or account and all photos uploaded by any user that have that user tagged in them to include metadata;

(d) All profile information; advertisement identification tied to the specific user and user's device; News Feed information; status updates; links to videos,

10

photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends Facebook user identification numbers; groups and networks of which the user is a member including the groups 'Facebook group identification numbers; future and past event postings; rejected Friend requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending Friend requests;

(f) All check ins and other location information;

(g) All IP logs including all records of the IP addresses that logged into the account; all device identifier logs, including all records of the device identifiers that logged into the account;

(h) All records of the account's usage of the Like feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any

person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken;

(q) Any records associated with photos posted to the user's Facebook account; any records associated with Instagram photos posted to other Facebook accounts that the user commented on or liked; and

(r) All other accounts which are forensically linked to the account identified in Attachment A through cookies, e-mail addresses, phone numbers, or other account information.

While all the above information was required to be disclosed to government scrutiny, all the warrants purported, in Attachment B, to *seize* only information that "constitutes fruits, evidence and instrumentalities"[7] of the delineated crimes, including such things as "[p]hotographs of women or girls in provocative poses, lingerie or naked women or girls." JA1487. In reality, based on a review of the discovery provided by the Government, the Government seized what it demanded to be disclosed—the entire[8] contents of the Facebook accounts, including available GPS information, photos of the account holders' children, private messages, birthday greetings, and a vast array of innocent messages and private information for extended time periods requested in the July and February 2019 warrants and without temporal limitation for the March and June 2019 warrants.

---

[7] That is, for the warrants issued on July 12, 2019, and February 20, 2019, violations of 18 USC § § 1951(a), (b)(1) and (c), 18 USC § 2421, 18 USC § 2422(a), 18 USC § 2423(a), 18 USC § 1952, and 18 USC § 1959(a)(3). The warrants issued on June 5 and June 12, 2019 sought evidence for similar allegations.

[8] It would appear that the United States provided in discovery to defense counsel the entire contents of all Facebook accounts obtained by the warrants in this case.

12

The affidavits in support these sweeping seizures alleged offense conduct related to the defendant-appellants that occurred from August 27, 2018 to October 11, 2018. JA1402-1403. There are no allegations in the affidavits that the defendants were involved in a conspiracy or suspects in child trafficking crimes eight months prior to the offense conduct justifying obtaining their GPS location data and other Facebook information from January 1, 2018, until the issuance of the warrants. As to defendant-appellant Luis Gonzalez, there are no allegations in the June 5, 2019 warrant affidavit indicating that he was involved in any other criminal conduct outside the dates of the indictment to justify the complete disclosure of his Facebook accounts without any temporal limitation. JA1380-1411.

Further, the warrant affidavits supporting warrants for the Facebook accounts of Luis Gonzales and Moises Zelaya-Veliz do not even claim these defendants utilized their Facebook accounts in furtherance of the alleged crimes under investigation, documented the alleged crimes, or discussed the alleged crimes through Facebook communications.

In all the warrant affidavits, the affiant makes general claims, based on his training and experience, regarding how "gang related prostitution rings/enterprises" operate, stating that "gang members regularly photograph their prostitutes and often use these photographs to advertise the prostitutes in print media or on-line." JA1400. The affidavits simply state that "it is known that individuals engaged in prostitution

will use electronic means to communicate with clients and prostitutes," including using "cellular telephones and other computer based systems; various social networking websites (*i.e.* Facebook, Instagram, and Twitter, e-mail services and instant messaging services." JA1401. The agent also makes general claims regarding MS-13 gang members and their use of cellular phones and messaging applications in furtherance of their crimes, provides general background on MS-13, and describes that it is "known" that gang members use social media platforms to communicate with each other and share photographs and videos. JA1401.

### Facts Related to Defendant-Appellant Gutierrez-Castro

In addition to the Facebook communications, the government offered the testimony of the alleged victim, E.B., who testified that she engaged in sex with multiple men at the home of Gutierrez-Castro. She testified further that she overhead him discussing payment in return for her having sex with the men. However, her testimony was inconsistent concerning this issue as she initially denied recalling Gutierrez-Castro discussing money with the men in return for her having sex when questioned on direct examination. JA456, JA560. She also indicated she did not recall Gutierrez-Castro discuss money with the men in return for having sex when initially questioned by law enforcement on this issue. JA560.

At the end of the government's case, counsel for Gutierrez-Castro made a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of

Criminal Procedure. JA43.  This motion was renewed and preserved by the court at the end of the case. JA1178.

### SUMMARY OF ARGUMENT

I.    **THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE**

The affidavits filed in support of the search warrants were facially deficient and failed to provide "a substantial basis for determining the existence of probable cause" for the entire contents of the defendant's Facebook accounts for a period of over 18 months or, in the case of Luis Gonzalez, without temporal limitations. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983). Indeed, the affidavits seemingly make the sweeping assumption that since the defendants were suspected of committing crimes, there must be incriminating information found in their Facebook accounts about the instant offenses. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

Further, the seizure and search of all electronic data from the defendants' Facebook accounts for such broad or unlimited timeframes constitutes an immense invasion of privacy and is precisely the baseless and overly broad rummaging barred by the Fourth Amendment and long condemned by our case law. Facebook can store an immense amount of personal data—including chats and messaging,

photos, GPS location data — much like a modern smartphone, if not more so, because Facebook is an online platform that "provides a single window through which almost every detail of person's life is visible." *United States v. Shipp,* 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019) (stating "threat" of overbroad warrant "is further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of a person's life is visible."); *see also Riley v. California*, 134 S. Ct. 2473, 2491 (2014) (noting the immense privacy interests inherent in a cellphone search and finding that such searches would "typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form.") (emphasis in original).

## II.    INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT THE GUILTY VERDICTS ON ALL COUNTS AS TO DEFENDANT GUITIERREZ-CASTRO

The trial judge committed error when he refused to grant defendant Gutierrez-Castro's Rule 29 motion for judgment of acquittal on all counts. The government failed to prove beyond a reasonable doubt that Gutierrez-Castro Conspired to Sex Traffic a Minor Under Age 14 and a Person via Force, Fraud, and Coercion (Count 4, Trial Count 1) (18 U.S.C. §§ 1591(a), (b)(1), (c) & 1594(c)); Sex Trafficked a

Minor Under Age 14 and a Person via Force, Fraud, and Coercion (Count 5, Trial Count 2) (18 U.S.C. §§ 1591(a), (b)(1), (c) & 2); and Conspired to Transport a Minor With Intent to Engage in Criminal Sexual (Count 6, Trial Count 3) (18 U.S.C. §§ 2423(a) & (c)). The victim testified that Gutierrez-Castro never transported her anywhere for the purpose of having sex with anyone. He never forced her to have sex with anyone and he never threatened or coerced her into having sex with anyone. Moreover, the victim testified that she did not have sex with Gutierrez Castro. JA560-562. She did testify that she had sex with several men while at Gutierrez-Castro's home, but she never testified that she observed him receive anything of value in return for her having sex. Moreover, her statements regarding him discussing payment for sex with her were inconsistent. Two times she admitted that she did not recall Gutierrez-Castro receiving payment for her having sex. JA456, JA560. It was only on direct examination, after essentially being impeached by the government concerning one of her statements to law enforcement, that she stated that she heard him discussing payment for her having sex. JA457-458. This statement was given after she initially told law enforcement that she did not hear him make such statements. JA560. The victim did not testify that she received from Gutierrez-Castro anything in return for her engaging in sex acts allegedly arranged by Gutierrez-Castro.

The government did not offer any additional witnesses that observed Gutierrez-Castro engage in the behavior charged. Moreover, the government's cooperating witnesses did not identify Gutierrez-Castro as someone they knew from engaging in any of the behavior charged in this case. In fact, they did not identify Gutierrez Castro at all.

Accordingly, a judgment of acquittal should be entered for Gutierrez-Castro on all counts.

## **ARGUMENT**

**I.     THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE WHERE THE SEARCH WARRANTS AUTHORIZING LAW ENFORCEMENT TO SEIZE AND REVIEW THE CONTENTS OF THE DEFENDANTS' FACEBOOK ACCOUNTS FOR LENGTHY PERIODS OF TIME OUTSIDE OF THE ALLEGED OFFENSE CONDUCT WERE ISSUED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AMENDMENT AND WERE FATALLY OVERBROAD, CONTRAVENING THE FOURTH AMENDMENT'S PARTICULARITY REQUIREMENT**

**A.     STANDARD OF REVIEW**

In determining an appeal from the denial of a suppression motion, the evidence is reviewed in the light most favorable to the government, the district court's findings of fact are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009). The application of the *Leon* good faith exception is reviewed *de novo*. *United States v. Williams*, 548 F.3d 311, 317 (4th Cir. 2008).

**B.     THE WARRANTS LACKED PROBABLE CAUSE**

The Warrant Clause of the Fourth Amendment commands that a warrant only issue upon probable cause and that the warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "These words are precise and clear." *Stanford v. Texas*, 379 U.S. 476, 481 (1965). A court reviewing the sufficiency of a search warrant must ensure that a "substantial basis" for determining probable cause existed, that the warrant was not "a mere ratification of the bare conclusions of others," and that the warrant process did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914-15 (1984); *see also United States v. Griffith*, 867 F.3d 1265, 1278 (D.C. Cir. 2017) (good faith exception cannot save facially insufficient warrant.).

The above mandates certainly apply to Facebook accounts, which can contain gigabytes of data, including messages, photos, videos, as well as geolocation data such that a broad and insufficiently tailored warrant to search these accounts runs the risk of sweeping in large quantities of information wholly unconnected with the suspected criminal activity. As noted above, like a smartphone, a Facebook account can contain "[t]he sum of an indivxfidual's private life," and implicate collected information about a person of unprecedented type, scope, and depth. *See Riley v. California*, 134 S. Ct. 2473, 2489 (2014); *United States v. Shipp,* 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019) (stating that "Facebook provides a single window through which almost every detail of person's life is visible.").

19

Here, law enforcement unjustifiably obtained a warrant for a laundry list of information from the defendants' Facebook accounts for an unlimited period of time as to defendant Luis Gonzalez and a period of 18 months and longer for the other defendants, including GPS location information, videos, photos, messages, and other information. Such a sweeping search is a perfect exemplar of the privacy risks discussed by the *Riley* Court with regard to cellphones and exposes the defendants' most private thoughts, associations, movements, and communications to state scrutiny for an unreasonable time period.

While the warrant affidavits provided a basis that the defendants were suspects in certain alleged crimes, probable cause to search their entire Facebook accounts requires more. That is, there must be reason to believe that the evidence sought by the government will be found in the place to be searched. *See Zurcher*, 436 U.S. at 556; *Steagald v. United States*, 451 U.S. 204, 213 (1981) ("A search warrant [] is used upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police."). In other words, there must be some "'nexus between the place to be searched and the items to be seized.'" *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (quoting *United States v. Anderson*, 851 F.2d

727, 729-30 & n. 1 (4th Cir.1988)); *see also*, *e.g.*, *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) ("[T]he affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of property is suspected of crime.") (quoting *Zurcher*, 436 U.S. at 556); *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) ("The test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched.") (quotation omitted); *United States v. Martin*, 297 F.3d 1038, 1314 (11th Cir. 2002) ("It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched.") (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir.1988)).

As to the individual defendants, there are sparse facts alleged in the warrant affidavit for Luis Gonzalez's Facebook that would lead one to believe that his Facebook account would produce evidence of the crimes under investigation. Indeed, there is no information in the warrant for his Facebook accounts that he used Facebook in furtherance of any of the alleged offenses—the warrant affidavit simply alleged that persons involved in such crimes used social media and he had social media.

As to Moises Zelaya-Veliz, the only information that the defendant communicated with anyone involved in the alleged offense conduct via Facebook is contained in paragraph 50 of the affidavit for his Facebook account. In paragraph 50, the warrant affidavit indicates that at some point in time (the dates are not provided), the defendant discussed the use of a gun with "Sonic" and sent photos of firearms, "drugs such as marijuana," and photos of people flashing gang signs and MS-13 graffiti. JA1447. However, there are no facts stating that he had any *communications* with regard to sex trafficking. Defendant Moises Zelaya-Velez does not disagree that the affidavit had facts that indicate that he was associated with MS-13. But there do not appear to be facts articulating a nexus between his Facebook account and the specific crimes under investigation set forth in the affidavit. This is especially true considering the broad range of data sought by the government, such as 18 months of GPS location data, and every communication during this time period. What are left are general statements about gang members and the use of social media, which does not constitute probable cause.

Absent specific facts articulating a nexus between property and criminal activity, courts have long declined to endorse warrants based solely on an invocation by law enforcement that an officer's training, experience, or knowledge justified a broad search. For example, in *United States v. Schultz*, the Sixth Circuit found no probable cause existed for a search warrant where law enforcement obtained the

22

search warrant for the defendant's bank safe deposit box despite the fact that there was no specific information indicating that the safe deposit boxes were utilized in the defendant's suspected narcotics operations. 14 F.3d 1093, 1097-98 (6th Cir. 1994). Instead, the only connection made between the location of the proposed search and criminal activity was a single police officer's claim that "based on his training and experience, he believed that it is not uncommon for the records, etc. of such drug distribution to be maintained in bank safe deposit boxes." *Id.* The Sixth Circuit held that no probable cause existed to support the issuance of the warrant in question, noting that "an officer's training and experience . . . cannot substitute for the lack of [an] evidentiary nexus," and that "[t]o find otherwise would be to invite the general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose." *Id.* (emphasis in original) (but applying good faith exception in upholding warrant).

Numerous courts across the country have endorsed the same common-sense holding—probable cause requires *some* specific factual foundation linking criminal activity to the property searched beyond mere conclusory claims made by law enforcement. *See*, *e.g.*, *United States v. Rios*, 881 F.Supp. 772, 774-775 (D. Conn. 1995) (refusing to find probable cause where affidavit contained only law enforcement agent's "general averments based on her training and experience" but

included "no allegations of *fact* linking [the defendant's] alleged illegal activity" to the place searched); *United States v. Rosario*, 918 F.Supp. 524, 531 (D.R.I. 1996) ("To permit a search warrant based solely upon the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect.") (citations omitted); *United States v. Gomez*, 652 F.Supp. 461, 463 (E.D.N.Y. 1987) ("[T]o issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses. This would effectively eviscerate the Fourth Amendment's requirement that there be probable cause to believe 'that contraband or evidence of a crime will be found *in a particular place.*'") (quotation and citation omitted) (emphasis in original).

In this case, what largely supports the warrants for Defendant-Appellants Luis Gonzalez and Moises Zelaya-Veliz are unsubstantiated generalizations about social media usage leading to the concerning conclusion that if you are a suspect in a crime and you have social media, law enforcement can seize the entirety of your social media accounts. The warrants and their fruits should have been suppressed by the trial court. For the other defendant-appellants, the warrant affidavits contained probable cause for some categories of Facebook account information such as communications, but not every conceivable type of data requested in the warrants.

As set forth below, the warrants for all defendants, which requested laundry lists of data from Facebook obviously designed to capture the entire universe of information Facebook maintains for individuals, were fatally overbroad.

## C.    THE WARRANTS WERE FATALLY OVERBROAD

The Fourth Amendment's particularity requirement prohibits warrants that give law enforcement "unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009). A warrant must "set out with particularity" the "scope of the authorized search," *Kentucky v. King*, 563 U.S. 452, 459 (2011), which "is closely tied to the requirement of probable cause." *United States v. Griffith*, 867 F.3d 1265, 1275 (D.C. Cir. 2017). This requirement constrains law enforcement by "prevent[ing] the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). Further, "a properly particularized warrant" leaves nothing to "the discretion of the officer execution [it]," making "general searches," which are prohibited by the Fourth Amendment, "impossible." *Marron*, 275 U.S. at 196. By ensuring that a search is "carefully tailored to its justifications," the particularity requirement ensures that a search "will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 489 U.S. 79, 84 (1987).

In this case, law enforcement's request for the entire contents of the defendants' Facebook accounts for a period of more than 18 months, or in the case

of Luis Gonzalez without even this limitation, for offense conduct that allegedly occurred between August 27, 2018, and October 11, 2018, was baseless. It equates to nothing more than a general warrant to rummage through their private information for months (if not years in the case of Luis Gonzalez) before and after any involvement in the conduct described in the affidavit. For example, there is no information in the warrant affidavits supporting that there was probable cause to seize information about defendants location or communications in January 2018 or before, or for numerous other categories of information sought by the warrant, such as the defendants "likes," their Facebook security questions, News Feed information, status updates, "gifts," "pokes," Facebook pages of which they were a "fan" of, "the length of service and the means and source of any payments associated with the service (including any credit card or bank account number)," and a host of other information.

Federal courts have been increasingly called on to scrutinize "Facebook warrants" and have expressed "serious concerns regarding the[ir] breadth." *United States v. Shipp,* 392 F. Supp. 3d 300, 307 (E.D.N.Y. 2019). In *Shipp*, the United States District Court for the Eastern District of New York confronted a broad Facebook warrant nearly identical to the latter two warrants at issue in this case. In fact, the warrant considered in *Shipp* appears to have contained the same laundry list of information or template to be "disclosed by Facebook" as warrants here. JA1476-

26

1478, JA1485-1486.[9] *Id.* at 304-306. Even worse than those warrants, here law enforcement *expanded* its template for the last two warrants to include two new categories of information:

"(q) Any records associated with photos posted to the user's Facebook account; any records associated with Instagram, photos posted to other Facebook accounts that the user commented on or liked; and

(r) All other accounts which are forensically linked to the account identified in Attachment A through cookies, e-mail addresses, phone numbers, or other account information."

JA1477-1478, JA1486-1487.

The *Shipp* court, in expressing its concern over the broad nature of a nearly identical warrant to the one here, stated that "'[a] general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of information [they] may contain.'" *Id.* at 307 (internal quotations omitted). "This threat is further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of person's life is visible." *Id.* at 308. The court noted that it was "[p]articularly troubling" that "information stored in non-Facebook applications may come to constitute part of a user's 'Facebook account'—and thus

---

[9] *Compare* categories (a) through (p) of July 12, 2019 (JA1476-1478) and February 20, 2020 (JA1485-1487) warrants to categories (a) through (p) of warrant in the *Shipp* case. *Shipp,* 392 F. Supp. 3d at 304-306.

be subject to broad searches—by virtue of corporate decisions, such as mergers and integrations, without the act or awareness of any particular user"—referencing Facebook's plans to merge Facebook Messenger, WhatsApp, and Instagram. *Id.* (citing media source). This Court should be equally troubled. It should also be of note that law enforcement, in this case, added new categories of information to be disclosed by Facebook to include "any records associated with Instagram" and "[a]ll other accounts which are forensically linked to the account identified in Attachment A through cookies, e-mail addresses, phone numbers, or other account information." JA1477-1478, JA1486-1487. There are no facts in the affidavit justifying such a broad search and seizure and, as concluded by the court in *Shipp,* "[i]t is thus hard to imagine many searches more invasive than a search of all data associated with a Facebook account." *Id.*

The *Shipp* court discussed decisions upholding broad Facebook warrants due to the purported nature of digital searches where "'it is not always feasible to 'extract and separate responsive data from non-responsive data.'" *Id.* (*citing United States v. Ulbricht*, 858. F.3d 71, 99-100 (2d. Cir. 2017) (also collecting cases). But, the district court noted that Facebook "is different from hard drives or email accounts in many ways, including that the information associated with the account is categorized by the company—not the user." This is critical (and obviously known to law enforcement based on the categories of Facebook information requested in this

warrant) because it is entirely feasible to tailor requests for Facebook account information to categories for which there is, in fact, probable cause.

As explained in *Shipp*:

> For this reason, Facebook is less like other areas of the 'digital realm, where the size or other outwardly visible characteristics of a file may disclose nothing about its content,' [citation omitted], and more akin to a physical location, in which 'the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry: an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection,' [citation omitted]. The concerns present in the search of a hard drive or email account—that evidence sought could be located almost anywhere—and which necessitate broad digital search protocols do not, therefore, exist in the Facebook context. For example, there is no possibility that a user could have filed an incriminating photo as a 'poke,' and there is no chance that an incriminating message will be stored as a third-party password or a rejected friend request.

*Id.* at 309.

Other courts have agreed that Facebook warrants can be limited and the "government need only send a request with the specific data sought and Facebook will respond with precisely that data." *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017)). The *Shipp* court was "concerned that Facebook warrants of the kind at issue here unnecessarily authorize precisely the type of 'exploratory rummaging' the Fourth Amendment protects against." *Id.* at 311 (internal quotation marks and citation omitted).

Here, law enforcement used template warrants and made no effort to tailor them to categories of information actually supported by the warrant affidavits. The affidavits alleged that the defendants may have been involved in trafficking of MINOR-2 for a short period of time and requested all information from their social media account for over 18 months or even, in the case of Luis Gonzalez, forever. These broad searches included seizing such items as [p]hotographs of women or girls in provocative poses, lingerie or naked women or girls" when there were no facts indicating the defendants were involved in an ongoing prostitution enterprise. JA1426, JA1478, JA1487. It is also hard to believe that the defendants "likes," Facebook security questions, News Feed information, status updates, "gifts," "pokes," "tags," privacy settings, Facebook pages of which they were "fans" of, "the length of service and the means and source of any payments associated with the service (including any credit card or bank account number)," communications and location months outside the period of offense conduct, and a host of other information would harbor evidence of the particular crimes described in the affidavit.

The District of Columbia Court of Appeals recently addressed an analogous situation: overbroad warrants for cell phones where the court struck down warrants authorizing a review of the "entire contents" of the appellant's two cell phones. *Eugene Burns v. United States,* 235 A.3d 758 (D.C. 2020) (internal citations omitted). In *Burns*, the warrants authorized a review of the complete contents of

30

seized phones, which resulted in law enforcement finding incriminating internet searches. Repeatedly citing *Riley v. California*, the *Burns* court recognized that "a modern smart phone [is] capable of holding an extraordinary amount of personal information related to the user and/or owner of the device" and held:

> Police sought search warrants that authorized an unlimited review of the contents of his cell phones for 'any evidence' of murder even though the warrants were supported by affidavits that established probable cause for only three narrow and discrete items of data. The warrants were thus overbroad and lacking in probable cause and particularity, and the warrant judge should not have issued them.

*Id.* at 767.

In light of *Riley*, multiple courts have begun to condemn warrants authorizing searches for the entire contents of cell phones that fail to adhere to the probable cause and particularity mandates of Fourth Amendment. *See e.g. State v. Smith*, 344 Conn. 229, 252, 278 A.3d 481, 497 (2022) (search warrant did not comply with the particularity requirement because it did not sufficiently limit the search of the contents of the cell phone by description of the areas within the cell phone to be searched, or by a time frame reasonably related to the crimes); *Richardson v. State*, 481 Md. 423, 282 A.3d 98 (2022) (search warrant authorizing officers to search and seize "all information" and "any other data stored or maintained inside of" cell phone violated Fourth Amendment's particularity requirement, because warrant and affidavit contained impermissibly broad "catchall" language, and detective did not

include any temporal restrictions or any other limitations, such as restrictions relating to application or other communication applications, call logs, or navigation/location data for evidence relating to robbery); *Taylor v. State*, 260 A.3d 602, 615–16 (Del. 2021) (search warrant that authorized "a top-to-bottom search" of "[a]ny and all store[d] data" of the digital contents of the devices held to be overbroad and violative of the particularity requirement); *State v. Bock*, 310 Or. App. 329, 334–36, 485 P.3d 931, 935–36 (2021) (search warrant that authorized seizure of any item on a cell phone that might later serve as circumstantial evidence of the device owner or user tantamount to a general warrant and thus overbroad); *People v. Clarke*, 73 Misc. 3d 1231(A), 156 N.Y.S.3d 830 (N.Y. Sup. Ct. 2021) (unpublished) (search warrant overbroad and failed to satisfy the particularity requirement where it authorized a search of nearly all files and data on the defendant's cell phone and failed to specify any date restriction of the files and data to be searched); *United States v. Winn*, 79 F. Supp. 3rd 904, 909 (S.D. Ill. 2015) (same).

In *United States v. Winn*, cited above, the defendant was suspected of using his cell phone to take photographs and/or videos of young girls in swimsuits without their parents' permission. 79 F. Supp. 3rd 904, 909 (S.D. Ill. 2015). Law enforcement sought and obtained a search warrant for the defendant's phone that authorized the collection of "any or all files contained on the cell phone and its

memory card that constituted evidence of the offense of Public Indecency." *Id.* at 910-911. Additionally, the warrant permitted seizure of data "including, but not limited to, the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any deleted data." *Id.* at 919.

While the *Winn* court found probable cause to believe that the defendant's phone contained evidence of the suspected crime, it found the warrant to be impermissibly overbroad and therefore in violation of the Fourth Amendment. In doing so, the district court noted several important considerations. First, the court found that the warrant's authorization to search "any or all files" was fatal because there was no probable cause whatsoever to believe that all data on the phone was evidence of a crime. *Id.* Indeed, the *Winn* court noted that numerous categories of data sought by the police, such as the calendar, phonebook, contacts, etc., had no connection whatsoever to the suspected offense. *Id.* at 919-920. The court stated:

> The bottom line is that if Detective Lambert wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to Winn's criminal activity, and he did not do so. Consequently, the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of public indecency.

> *Id.* at 920.

In addition, the *Winn* court disapproved of the overbroad authorization to seize even those categories of data for which probable cause existed—photos and video—without any attendant limitations to subject matter and time. *Id*. As such, the court noted that the warrant should have limited the seizure of photos and video solely to those images connected with the criminal investigation and restricted a timeframe to the date of the suspected offense. *Id.* at 920. Noting that the warrant "allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the Fourth Amendment proscribes," the *Winn* court refused to endorse such a facially overbroad warrant. *Id*.

Here, like *Winn*, the special agent had a duty to describe in the warrant affidavits how each category of information sought from the defendants' Facebook accounts was connected to the defendants' alleged criminal activity and did not do so. Further, as in *Winn*, even for any categories of information arguably supported by probable cause, the special agent failed to restrict the request to a timeframe of the suspected offenses. As such, the warrant, like the ones considered in numerous case cited above, should be struck down, and their fruits suppressed.

## D.   THE EXCLUSIONARY RULE'S GOOD FAITH EXCEPTION SHOULD BE REJECTED

The *Shipp* court, despite its concerns regarding the overbroad Facebook warrant, applied the good-faith exception to the Fourth Amendment's exclusionary

rule and upheld the warrant. The court found that the warrant was not so facially deficient "of probable cause as to render official belief in its existence entirely unreasonable" and the affidavit "articulated probable cause to search at least certain categories of information or services associated with the Facebook account." *Id.* at 312 (citing other courts applying good faith exception to similar warrants); s*ee also United States v. Jason Mize*, No. 1:18-cr-74 (S.D. Ohio 2020) at 10 (applying good faith exception to likely overbroad Facebook warrant and collecting cases holding the same).[10]

But this Court should not apply the good faith exception to the Fourth Amendment's exclusionary rule. The special agent who prepared the warrant affidavit for Facebook accounts in this case knew he had requested Facebook records for defendants beyond the timeframe of the alleged offense based on the warrant affidavits and indictment. Further, how many times must law enforcement receive the benefit of the good faith exception for overbroad Facebook warrants when courts have been criticizing such warrants for several years? In 2017, the Eleventh Circuit, in considering essentially identical Facebook warrants as here, stated the warrants "unnecessarily" required the disclosure of "every kind of data that could be found in

---

[10] The court particularly cited *United States v. Liburd*, No. 17-cr-296, 2018 WL 2709199 (E.D.N.Y June 5, 2018), *United States v. Westley*, No. 17-cr-171, 2018 WL 3448161 (D. Conn. July 17, 2018), and *United States v. Tairod Nathan Webster Pugh*, No. 15-cr-00116 (E.D.N.Y. Dec. 21, 2015).

a social media account." *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017).

That is, the government and the FBI have been on notice that Facebook warrants

such as the one in this case are blatantly overbroad and violate the Fourth

Amendment.

In analogous cases concerning overbroad warrants for cell phones, courts have

refused to apply the good faith exception. In *Burns*, discussed above, the District of

Columbia Court of Appeals rejected the government's claim that overbroad warrants

for cellphones should be salvaged by the exclusionary rule's good faith exception:

> The warrants' deficiencies, moreover, were so extreme and apparent
> that a reasonably well-trained police officer, with reasonable
> knowledge of what the law prohibits, would have known the warrants
> were invalid notwithstanding their approval by a judge. The good
> faith exception to the exclusionary rule therefore does not apply, and
> the trial judge should have granted Mr. Burns's motion to suppress all
> of the data collected from both phones.

*Burns*, 235 A.3d at 767.

The *Winn* court, also discussed above, likewise rejected the application of the

good faith exception in striking down an overbroad cell phone warrant. *Winn,* 79 F.

Supp. 3rd at 909. The court noted that law enforcement used a template warrant (like

here) and neither the prosecutor nor the detective made any effort to tailor the

template's categories to those supported by the warrant affidavit. *Id.* at 923. The

court in *Winn* also found that the judge authorizing the warrant could not have

sufficiently reviewed it where the warrant requested a review of the cell phone's

entire contents. Lastly, the court found that the warrant was "so facially and grossly overbroad in its description of the items to be seized that '[a] reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization.'" *Id.* (*citing and quoting United States v. Leon,* 468 U.S. 896 at 923, n. 23 (1984)). It noted the 15 years of experience of the detectives that sought for and obtained the warrant and held that "it was not objectively reasonable for them to think that a warrant was valid when it gave them unbridled discretion to search for and seize whatever they wished." *Id.* at 924 (*citing United States v. Leary,* 846 F.2d 592, 609 (10th Cir.1988) ("A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.")).

Here, the special agent applied for and obtained warrants that used templates of Facebook information categories and made no effort to tailor them to those categories supported by probable cause. These un-tailored template warrants were issued despite the fact that courts, over the past several years, have been critical of overbroad Facebook warrants that "unnecessarily" require the disclosure of "every kind of data that could be found in a social media account." *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017). Certainly, the warrant affidavits in this matter were so obviously overbroad in their requests for nine and then eighteen different categories of Facebook account records, many of which were not supported by any probable cause whatsoever, that "[a] reasonably well-trained officer would have

known the search was illegal despite the issuing judge's authorization." *United States v. Leon,* 468 U.S. 896 at 923, n. 23 (1984).

Given that, the good faith exception does not apply here, and the Court should not excuse the overly broad and illegal search warrants issued in this case.

## II.      INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO SUPPORT THE GUILTY VERDICTS ON ALL COUNTS FOR DEFENDANT GUTIERREZ-CASTRO

### A.      STANDARD OF REVIEW

This court reviews, de novo, the district court's denial of a motion for a judgment of acquittal. *United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010), *cert. denied*, 562 U.S. 913. In assessing the sufficiency of the evidence, the court construes the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *United States v. Penniegraft*, 641 F.3d 566, 571 (4th Cir. 2011) (citation and emphasis omitted). "Appellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear." *Green*, 599 F.3d at 367 (internal quotation marks, alteration, and citation omitted). A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks and citation omitted).

The remedy for reversal of a conviction based on insufficiency of the evidence is entry of judgment of acquittal. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993).

## B.    INSUFFICIENT EVIDENCE WAS PRESENTED TO PROVE DEFENDANT GUTIERREZ-CASTRO GUILTY

As previously noted, at the conclusion of the prosecution's case, defendant Gutierrez-Castro made a motion for judgment of acquittal pursuant to Rule 29, Federal Rules of Criminal Procedure. The motion was renewed at the end of all of the evidence by the court as it stated it would deem as renewed each defendant's motion to save time. JA1178. The court thereafter gave each defendant additional time to file additional arguments concerning the Rule 29 motion for judgment of acquittal. Defendant Gutierrez-Castro did not offer additional arguments concerning the issue. The court subsequently denied the defendant's Rule 29 motion. JA51. Defendant Gutierrez-Castro now contends that the trial judge committed error when he denied his Rule 29 motion based upon the evidence and arguments made at the conclusion of the government's case and renewed motion preserved by the court at the conclusion of all of the evidence presented in the case.

As stated previously, the government failed to establish beyond a reasonable doubt that defendant Gutierrez-Castro committed the crimes for which he was charged. Not one witness testified about an agreement with Gutierrez-Castro to engage in sex trafficking. Not one witness testified about Gutierrez-Castro assaulting

the alleged victim. Not one witness testified about Gutierrez-Castro transporting the victim for the purpose of engaging in criminal sexual activity. Not one witness testified about Gutierrez-Castro receiving or giving anything of value or otherwise in return for sexual acts by the victim. The victim, at best, testified, that while at Gutierrez-Castro's home, she overhead him discussing with others payment for having sex with her. JA457-458. She made inconsistent statements regarding this issue, and she never witnessed any payments. She initially told law enforcement she never heard anything about this and she initially responded that she never heard him discuss payment when questioned on direct examination. JA456, JA560. She never testified about any form of force, fraud and coercion by Gutierrez-Castro or him transporting her anywhere for the purpose of engaging in criminal conduct of any kind.

Accordingly, this court should enter a judgment of acquittal on all counts as to Gutierrez-Castro.

## CONCLUSION

For the above stated reasons, this Honorable Court should reverse Defendant-Appellants' convictions and remand the case to the district court for a new trial. For the above stated reasons, this Honorable Court should reverse the convictions concerning defendant Gutierrez-Castro and enter a judgment of acquittal as to all counts.

# REQUEST FOR ORAL ARGUMENT

Defendant-Appellants respectfully request oral argument.

/s/ Joseph King
Joseph D. King
King, Campbell, Poretz & Mitchell PLLC
118 N. Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
jking@kingcampbell.com
*Counsel for Mr. Moises Zelaya-Veliz*

Donald E. Harris
Harris Law Firm
2800 Eisenhower Ave. Ste. 220
Alexandria, Va 22314
(703) 224-8810
dh@harrisfirmva.com
*Counsel for Mr. Jose Eliezar Molina-Veliz*

Dwight E. Crawley
Counsel for Santos Gutierrez Castro
Law Office of Dwight E. Crawley
1300 I. Street, NW, Suite 400E
Washington, DC 20005
(202) 580-9794
vadclawyer@gmail.com
*Counsel for Mr. Ernesto Santos Gutierrez Castro*

Jeffrey Zimmerman
Jeffrey Zimmerman, PLLC
108 N. Alfred Street
Alexandria, VA 22314
 (703) 548-8911
Email: www.zimpacer.com
*Counsel for Mr. Luis Alberto Gonzalez*

41

Donna L. Biderman
Law Office of Donna Biderman
4015 Chain Bridge Road, Suite 38
Fairfax, Virginia 22030
(703) 966-5434
dbiderman@bidermanlaw.com
*Counsel for Mr. Gilberto Morales*

Christopher Amolsch
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
(703) 969-2214
chrisamolsch@yahoo.com
*Counsel for Mr. Jonathan Rafael Zelaya-Veliz*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*9,633*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: June 26, 2023                    /s/ Joseph King
                                                        *Counsel for Mr. Moises Zelaya-Veliz*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June, 2023, I caused this Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Alexandra Z. Bedell
> Maureen C. Cain
> Seth M. Schlessinger
> Cristina C. Stam
> OFFICE OF THE U.S. ATTORNEY
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> (703) 299-3773
>
> *Counsel for Appellee*

I further certify that on this 26th day of June, 2023, I caused a copy of the Sealed Volume of the Joint Appendix to be served, via FedEx, upon counsel for the Appellee, at the above address.

/s/ Joseph King
*Counsel for Mr. Moises Zelaya-Veliz*

44