# 22-4656(L), 22-4659, 22-4669, 22-4670, 22-4684, 22-4685

# United States Court of Appeals
## *for the*
# Fourth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

MOISES ORLANDO ZELAYA-VELIZ, SANTOS ERNESTO
GUTIERREZ CASTRO, JOSE ELIEZAR MOLINA-VELIZ,
LUIS ALBERTO GONZALES, GILBERTO MORALES,
JONATHAN RAFAEL ZELAYA-VELIZ,

*Defendants/Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# REPLY BRIEF OF APPELLANTS

JOSEPH D. KING
KING, CAMPBELL,
 PORETZ & MITCHELL PLLC
118 North Alfred Street
Alexandria, Virginia 22314
(703) 683-7070

*Counsel for Appellant*
 *M. Zelaya-Veliz*

CHRISTOPHER B. AMOLSCH
CHRISTOPHER AMOLSCH
12005 Sunrise Valley Drive,
 Suite 200
Reston, Virginia 20191
(703) 969-2214

*Counsel for Appellant*
 *J. Zelaya-Veliz*

*(Additional Counsel
Listed on the Inside Cover)*

CP COUNSEL PRESS • VA – (804) 648-3664

DONNA L. BIDERMAN
LAW OFFICE OF
DONNA L. BIDERMAN, PLLC
4015 Chain Bridge Road,
  Suite 38
Fairfax, Virginia 22030
(703) 966-5434

*Counsel for Appellant*
  *Morales*

DONALD E. HARRIS
HARRIS LAW FIRM
2800 Eisenhower Avenue,
  Suite 220
Alexandria, Virginia 22314
(703) 224-8810

*Counsel for Appellant*
  *Molina-Veliz*

DWIGHT E. CRAWLEY
LAW OFFICE OF DWIGHT CRAWLEY
1300 I Street, NW, Suite 400e
Washington, DC 20005
(202) 580-9794

*Counsel for Appellant*
  *Castro*

JEFFREY D. ZIMMERMAN
JEFFREY ZIMMERMAN, PLLC
108 North Alfred Street
Alexandria, Virginia 22314
(703) 548-8911

*Counsel for Appellant*
  *Gonzales*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................... ii

ARGUMENT ...................................................................................1

THE DISTRICT COURT ERRED IN DENYING DEFENDANTS'
MOTIONS TO SUPPRESS FACEBOOK EVIDENCE .................................1

    I.    The Warrants Were Overbroad and Lacked Particularity ...........1

    II.   The Government's Severance Argument Must Be
        Rejected....................................................................................10

    III.  The Good Faith Exception Does Not Apply.............................12

    IV.  The Facebook Evidence Infected The Entire Trial And Its
        Erroneous Admission Was Not Harmless Error........................15

CONCLUSION .................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Fahy v. Connecticut*,
    375 U.S. 86 (1963)..................................................................................16, 17

*Marron v. United States*,
    275 U.S. 192 (1927)......................................................................................6

*United States v. Blake*,
    868 F.3d 960 (11th Cir. 2017).......................................................................13

*United States v. Blakeney*,
    949 F.3d 851 (4th Cir. 2020)..........................................................................4

*United States v. Burkhow*,
    2020 WL 589536 (N.D. Iowa Feb. 6, 2020)...................................3, 8, 10, 12

*United States v. Chavez*,
    423 F. Supp. 3d 194 (W.D.N.C. 2019) ...........................................................9

*United States v. Cobb*,
    970 F.3d 319 (4th Cir. 2020)...........................................................4, 5, 6, 11

*United States v. Daprato*,
    2022 WL 1303110 (D. Me. May 2, 2022) ......................................................8

*United States v. Franklin*,
    2022 WL 3572697 (W.D. Mo. July 28, 2022).................................................9

*United States v. Garcia-Lagunas*,
    835 F.3d 479 (4th Cir. 2016)........................................................................16

*United States v. Leon*,
    468 U.S. 897 (1984).......................................................................3, 10, 12

*United States v. Melton*,
    761 Fed. Appx. 171 (4th Cir. 2019).........................................................15, 16

*United States v. Mercery*,
    591 F. Supp. 3d 1369 (M.D. Ga. 2022) ...................................................10, 14

*United States v. Mize*,
    No. 1:18-cr-74 (S.D. Ohio 2020)....................................................................12

*United States v. Poole*,
    640 F.3d 114 (4th Cir. 2011) .........................................................................16

*United States v. Shipp*,
    392 F. Supp. 3d 300 (E.D.N.Y. 2019)....................................................8, 9, 12

## CONSTITUTIONAL PROVISION

U.S. Const. amend. IV ......................................................................*passim*

## RULE

Fed. R. Crim. P. 41(e)(2)(b) .........................................................................7

# ARGUMENT

## THE DISTRICT COURT ERRED IN DENYING DEFENDANTS' MOTIONS TO SUPPRESS FACEBOOK EVIDENCE

### I.    The Warrants Were Overbroad and Lacked Particularity

The United States, in urging this Court to apply the doctrine of severance if the warrants are found to be overboard,[1] confirms that the Facebook data admitted at trial "reveals that the data was almost exclusively date stamped from August 27 through October 11, 2018," the dates of the alleged offense conduct in the indictment. Brief of the United States at 52. This is an acknowledgement that the vast Facebook data grab by the Government, temporally unlimited in the warrant for Luis Gonzales' Facebook accounts and consisting of 18 months or more of Facebook data for the other Defendant-Appellants (to include GPS data for almost nine months before the offense conduct), was unwarranted. That is, a primary argument put forward by the Government and adopted by the district court justifying the Government's vast privacy intrusion into the Defendant-Appellants social media accounts, the purported ongoing criminal enterprise and complexity of the investigation necessitated broad temporal warrants, are belied by the trial facts. *See* Brief of the United States

---

[1] The Defendant-Appellants address below why the doctrine of severance should not be applied in this case.

at 22 (stating the "affidavits describe a broader, complex investigation law enforcement was engaged in as to MS-13's sexual exploitation of three minors and violent crimes in aid of racketeering.").

Furthermore, a review of the Facebook data admitted at trial fails to reveal how the defendants' Facebook pokes, status updates, Newsfeed information, and a host of other Facebook data demanded by law enforcement played any role whatsoever in the Government's investigation and prosecution. The evidence admitted at trial is informative as to what probable cause existed at the time when the warrants were issued.

In analyzing the warrants, with respect to *facts* set forth in the affidavits supporting probable cause to seize certain categories of data, the warrant affidavits dated March 14, 2019 and June 5, 2019 largely quote Facebook communications and shared photos.[2] Later warrants largely quote the same and occasionally refer to friend requests, Facebook GPS data (obtained from earlier warrant), and phone numbers linked to the accounts.[3] There are no facts in the affidavits that provide a

---

[2] *See* affidavit to warrant dated March 14, 2019 at ¶ 38, JA1366-1371, ¶¶ 42-43, JA1372, ¶ 50-58 JA1374; affidavit to warrant dated June 5, 2019 at ¶ 71, JA1411, ¶¶ 72, 74 JA1413-1415, ¶ 77, JA1416, ¶¶ 86-88, 90, JA1419-1422.

[3] *See* affidavit to warrant dated July 26, 2018 at ¶¶ 36-37, JA1443, ¶¶ 49-50, JA1446-1447, ¶ 56, JA1445-1449, ¶ ¶ 72-73,75-79, 86, 88, JA1453-1471, ¶ 94, JA1476-1480; affidavit to warrant dated February 20, 2020 at ¶ 48, JA1572, ¶ ¶ 67-68, JA 1527, ¶ ¶ 83-85, 87-88, JA1531-1533, ¶ 103, JA1536, ¶ 109,111, 113-14, 117-119, JA1538-1542, ¶ ¶ 126-137, 140-154, 157-160, 163-179, 182-189, 193-96, 201-207, JA1544-1584.

substantial basis that evidence of the crimes at issue would be found in the defendants' pokes, status updates, Newsfeed information, and other categories of data—nor how the defendants GPS location data and what IP addresses they used to connect to Facebook nine months before the onset of the alleged criminal conduct. It would also be wholly speculative to believe that the investigation would be advanced by the seizure of such information.

As to the warrant for Defendant Luis Gonzales' Facebook accounts that had no temporal limitation, and thereby subjected to government scrutiny potentially years of online activity, the overbreadth of the request is obvious. See *United States v. Burkhow*, 2020 WL 589536, at *10 (N.D. Iowa Feb. 6, 2020) (finding intruding into "[o]nline activity defendant engaged in years ago—including everything from private messages to rejected friend requests to "pokes"—was not necessary to review under the circumstances here"; "permitting the search of defendant's entire Facebook account was broader than the probable cause on which the warrant was based"; but applying *Leon*'s good faith exception).

Defendant-Appellants correctly argued to the trial court that no probable cause existed for numerous categories data and hence the warrants violated the Fourth Amendment's particularity requirement and were impermissibly overbroad. As stated by defense counsel at argument during the motion to suppress in highlighting the overbreadth of the warrants that demanded location data almost nine months

before the allegations: "it's hard to believe that law enforcement would need or have probable cause or any reason at all to know Mr. Zelaya-Veliz's location on January 1st, 2018, when these crimes hadn't even been committed." JA96. Defendant-Appellants' submit that the data used at trial underscores the reality: law enforcement had no probable cause for its huge data grab.

The Government cites *United States v. Cobb*, 970 F.3d 319, 329 (4th Cir. 2020) for the principle that a warrant "may satisfy the particularity requirement *either* by identifying the items to be seized by reference to a suspected criminal offense or by describing them in a manner that allows an executing officer to know precisely what he has been authorized to search for and seize." The operative language in *Cobb* is that a warrant "may" satisfy the particularity requirement by citing the offenses under investigation or what law enforcement is authorized to seize, but only when the facts supporting probable cause do not permit a more particularized search. That is "where a warrant does not *otherwise* describe the evidence to be seized, that gap can be filled, at least sometimes, if the warrant instead specifies the relevant offense." *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020) (citing *Blakeney*, 949 F.3d at 862-63) (emphasis in the original).

In *Cobb*, "[t]he officers had probable cause to believe that the computer seized during the search of Cobb's home contained evidence" relevant to a murder "because Cobb, within 48 hours of the murder, instructed his parents to remove the computer

4

from his room and clean it." *Id.* at 327. The officers justifiably obtained a warrant to seize and search the entire computer for evidence of murder without describing the precise files to be seized. The *Cobb* court found this to be permissible because the facts supporting probable cause did not permit a more particularized search: "the officers had no way of knowing when they applied for the warrant exactly *what* the evidence was that Cobb sought to destroy, or *where* Cobb had placed the evidence on the computer" and hence the warrant was "sufficiently particular because it too confined the executing officers' discretion by allowing them to search the computer and seize evidence of a specific illegal activity—Wilson's murder on September 7, 2014." *Id.* at 328-29.

Here, law enforcement had facts (e.g. when the offenses occurred—August 27, 2018 to October 11, 2018—and particular categories of relevant Facebook information in the form of communications and photos) that should have been used to particularize the warrants. It was unreasonable to obtain a warrant for what appears to be the universe of information in Gonzales' Facebook accounts without any temporal limitation or the other Defendant-Appellants' Facebook accounts for a timeframe that far exceeded the offense conduct in the indictment or what was known at the time of the issuance of warrant.

That is, *Cobb* does not stand for the proposition that law enforcement can simply cite in the warrant the offense being investigated, conduct a search, and thereafter only seize evidence related to the crime being investigated. This would undermine which is meant to prevent such rummaging because "a properly particularized warrant" leaves nothing to "the discretion of the officer execution [it]," making "general searches," which are prohibited by the Fourth Amendment, "impossible." *Marron v. United States*, 275 U.S. 192, 196 (1927). The warrants at issue in this case do the opposite—permitting a vast seizure of information that law enforcement can sift through and then "seize" what purportedly constitutes instrumentalities of the crimes.

The United States argues that the warrants are valid because attachment B to each warrant specified the statutes for which evidence should be seized, thus "the warrants were sufficiently particular." Brief of the United States at 51. Simply citing a statute for which evidence will be seized does not particularize a warrant where the circumstances of the crime call for a more specific inquiry. Further, while each warrant included an Attachment B, which delineated in Part I the categories of data to be disclosed by Facebook (apparently designed to require disclosure of the entirety of data maintained by Facebook as to the accounts in question), and, in Part II, the purported information to actually be seized by law enforcement (the instrumentalities and evidence of the crimes being investigated), "the Government seized what

it demanded to be disclosed—the entire contents of the Facebook accounts, including available GPS information, photos of the account holders' children, private messages, birthday greetings, and a vast array of innocent messages and private information for extended time periods" in the warrants. Brief of Appellants at 12.

During the suppression hearing on this matter, the Government agreed that it had turned over the entire contents of all Facebook accounts seized to all defense counsel, which could be shared under a protective order, with their clients: "Now, we have provided the entire set of Facebook data to the defense attorneys for their own review as well, and it's under protective order." JA81 (comments of the United States during suppression hearing held on August 27, 2021).  The Government during the suppression hearing reported that the review of Facebook data, much of which had been seized over two years earlier, was ongoing and this review would continue up until the time of trial in accord with a two-step procedure authorized under Federal Rule of Criminal Procedure 41(e)(2)(b).[4] JA80-81. The district court agreed that this two-step procedure was appropriate. JA119 (stating "[b]ased on the circumstances of this case, the Court concludes that the Government was authorized and is authorized to proceed with this two-step procedure, and that at this point it cannot be said that the time period to complete that process has expired."). However,

---

[4] The United States indicated that the review of the data was made difficult because much of it was in the Spanish language and there was a shortage of FBI translators. JA81.

there is nothing in the record that the Facebook data irrelevant to the investigation, trial, and prosecution has been sealed or returned to Facebook. This is emblematic of the overbreadth of these warrants and implicates significant privacy concerns. *See United States v. Shipp*, 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019) (stating "threat" of overbroad warrant "is further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of a person's life is visible.")

The decisions cited by the Government are not persuasive. For example, in *United States v. Daprato*, the United States District Court for the District of Maine rejected arguments that a warrant for 17 different categories of Facebook records was overbroad in a murder investigation "for the time period between August 1, 2019 (right before the alleged crime) and December 26, 2019 (the date of the warrant)." *United States v. Daprato*, 2022 WL 1303110, at *2 (D. Me. May 2, 2022). The district court in *Daprato* noted that the warrant at issue temporally limited the information sought to "right before the alleged crime." However, particularly relevant to Defendant Gonzalez' challenge, the district court also noted other courts had expressed concern over the lack of temporal limitations in warrants for social media records. *Id.* at *7 (citing *United States v. Burkhow*, No. 19-CR-59, 2020 WL 589536, at *10 (N.D. Iowa Feb. 6, 2020) ("Some reasonable attempt could have been made

to narrow the scope of this search, particularly by setting date limitations if not restrictions to specific account activities or interactions with particular persons."); *United States v. Chavez*, 423 F. Supp. 3d 194, 207 (W.D.N.C. 2019) ("[T]he Government compelled Facebook to disclose sixteen broad categories of evidence, without limiting disclosure to the purported members or purported dates."); *United States v. Shipp*, 392 F. Supp. 3d 300, 310 (E.D.N.Y. 2019) ("[Including a temporal limitation] could have mitigated the court's concerns about the breadth of this warrant.").

The United States also cites other courts that have endorsed a two-tiered approach in which warrants require disclosure of broad categories of information from social media companies and purport to seize only evidence and instrumentalities of the crime as comporting with the particularity requirement. *See e.g. United States v. Franklin*, 2022 WL 3572697, at *9 (W.D. Mo. July 28, 2022). However, the Defendant-Appellants' contend that this procedure was not carried out in this case as "the Government seized what it demanded to be disclosed—the entire contents of the Facebook accounts, including available GPS information, photos of the account holders' children, private messages, birthday greetings, and a vast array of innocent messages and private information for extended time periods" in the warrants. Brief of Appellants at 12.

In addition to the cases cited in the Defendants opening brief, other courts have also found warrants for social media records to violate the Fourth Amendment's particularity requirement. *See e.g United States v. Burkhow*, 2020 WL 589536, at \*10 (N.D. Iowa Feb. 6, 2020) (finding intruding into "[o]nline activity defendant engaged in years ago—including everything from private messages to rejected friend requests to "pokes"—was not necessary to review under the circumstances here"; "permitting the search of defendant's entire Facebook account was broader than the probable cause on which the warrant was based"; but applying *Leon*'s good faith exception); *United States v. Mercery*, 591 F. Supp. 3d 1369, 1383 (M.D. Ga. 2022) (finding warrant for defendant's entire Instagram account without temporal limitations overbroad and rejecting application of good faith exception).

## II.    The Government's Severance Argument Must Be Rejected

The United States further argues that even if the warrants violated the Fourth Amendment, the proper remedy is severance or "to strike the Facebook data that was obtained under any constitutionally infirm provision of the warrant" where "the Facebook data presented at trial largely fell within that time frame." Brief of the United States at 43. In particular, the United States argue that the exhibits admitted at trial "reveals that the [Facebook] data was almost exclusively date stamped from August 27 through October 11, 2018," the dates of the alleged offense conduct in the indictment. *Id.* at 52.

First, the Defendant-Appellants respectfully submit this argument should be rejected because the district court did not rule on the doctrine's applicability nor did the United States argue its application before the district court. *See* Omnibus Brief in Opposition to Defendants' Motion to Suppress Facebook Evidence, ECF 114, *United States v. Moises Zelaya-Veliz*, 1:20-cr-196. In this regard, while this Court formally applied the severance doctrine in *United States v. Cobb*, the trial court in *Cobb* specifically addressed the doctrine of severance in its underlying ruling. Second, the facts of *Cobb* are materiality different than this case. In *Cobb*, the Court found language seeking authority to seize "[a]ny and all evidence of any other crimes," in addition to the crime of murder, could be severed from an otherwise valid warrant that set forth ample probable cause to search a computer for evidence of murder and the application of the exclusionary rule would not further the purpose of the rule—to deter police misconduct. *United States v. Cobb*, 970 F.3d 319, 330 (4th Cir. 2020). The Defendant-Appellants' submit the warrants at issue in this case are different than the warrant in *Cobb* in that they were designed to be as broad as possible, in violation of the Fourth Amendment's particularity requirement, by requesting every conceivable type of data Facebook had in its possession for an unlimited period of time as to Gonzales and expansive periods of time as to the other defendants and hence the application of the severance doctrine would be inappropriate.

## III.   The Good Faith Exception Does Not Apply

The United States erroneously asserts the good faith doctrine of *Leon* should apply, Brief of the United States at 43. It does not. Facebook warrants such as those in this case have been found to be blatantly overbroad and to clearly violate the Fourth Amendment.

Defendant-Appellants recognize, as stated in their opening brief, that an increasing number of courts have found identical or nearly identical warrants as in this case seeking the disclosure of the entire contents of Facebook accounts are likely overbroad, but have nonetheless applied the good faith exception to the Fourth Amendment's exclusionary rule. *United States v. Shipp*, 392 F. Supp. 3d 300, 312 (E.D.N.Y. 2019) (citing other courts applying good faith exception to similar warrants for Facebook records); *United States v. Jason Mize*, No. 1:18-cr-74 (S.D. Ohio 2020) at 10 (applying good faith exception to likely overbroad Facebook warrant and collecting cases holding the same); *Burkhow*, "[g]ood faith is often present despite the overbreadth of a warrant to search a social media profile." 2020 WL 589536, at *11.

However, as the Defendant-Appellants' state in their brief, "[I]n 2017, the Eleventh Circuit, in considering essentially identical Facebook warrants as here, stated the warrants 'unnecessarily' required the disclosure of 'every kind of data that could be found in law enforcement has been put on notice a social media account.'"

*United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017). That is, the government and the FBI have been on notice that Facebook warrants such as the one in this case are blatantly overbroad and violate the Fourth Amendment." Brief of Defendant-Appellants at 35-36.

The United States District Court for the Middle District of Georgia recently adopted this precise conclusion in suppressing an overbroad warrant for a defendant's Instagram and rejecting the application of the good-faith exception:

> First, the Eleventh Circuit in *Blake* put law enforcement on notice that warrants authorizing the type of broad search of social media accounts like the one in this case are overbroad. The Eleventh Circuit decided *Blake* in August 2017, over three years before the Instagram warrant was issued in this case. And unlike the warrants in *Blake* that "may have violated the particularity requirement," and were "a close enough question," the Instagram Warrant clearly violates the Fourth Amendment's particularity requirement.
>
> Second, not only is the Instagram Warrant overbroad in describing what Instagram is compelled to produce, it contains no limitation on what the government can seize from the broad production of data. Indeed, the Instagram Warrant is broader than any social media warrant other courts have found violated the Fourth Amendment's particularity clause but were ultimately upheld under *Leon*.
>
> Finally, and most important, excluding the evidence obtained under the unconstitutional warrant will deter future violations. Social media networks like Instagram and Facebook are an ever-increasing form of communication and hubs of personal information for which law enforcement routinely seek and obtain search warrants. Officers need to know that a warrant must provide guidelines for determining what evidence may be searched and seized and must be tailored to the probable cause established in the supporting affidavit. Thus, the Court finds the good faith exception inapplicable under the circumstances here, and

Defendant's Motion to Suppress evidence seized pursuant to the Instagram Warrant is GRANTED.

*United States v. Mercery*, 591 F. Supp. 3d 1369, 1383 (M.D. Ga. 2022).

The Defendant-Appellants recognize that the suppressed warrant in *Mercery* differs from the Facebook warrants at issue in this case. Here, law enforcement sought disclosure of broad categories of data set forth in Attachment B, Part I to the warrants, but pledged to only "seize" the instrumentalities and evidence of the crimes being investigated set forth in Attachment B, Part II. *See* Attachment B of Facebook Warrants, JA1357-1358 (March 14, 2019 warrant), JA1382-1394 (June 5, 2019 warrant), JA1476-1480 (July 26, 2019 warrant), JA1484-1489 (February 20, 2020 warrant). However, the Defendant-Appellants' contend that "the Government seized what it demanded to be disclosed—the entire contents of the Facebook accounts, including available GPS information, photos of the account holders' children, private messages, birthday greetings, and a vast array of innocent messages and private information for extended time periods" in the warrants. Brief of Appellants at 12. During the suppression hearing on this matter, the Government agreed that it had turned over the entire contents of all Facebook accounts seized to all defense counsel, which could be shared under a protective order, with their clients: "Now, we have provided the entire set of Facebook data to the defense attorneys for their own review as well, and it's under protective order." JA81 (comments of the

United States during suppression hearing held on August 27, 2021.) The Government during the suppression did indicate that the review of the Facebook data, at that point in time much of which had been seized more than two years earlier, was ongoing and this review would continue up until the time of trial. At the time of this brief, however, there is nothing in the record indicating and Defendant-Appellants have received no notice that their data irrelevant to the investigation, trial, and their prosecution has been sealed or returned to Facebook.

The application of the good faith exception should be rejected.

## IV. The Facebook Evidence Infected The Entire Trial And Its Erroneous Admission Was Not Harmless Error

The Government contends that even "[a]ssuming the district court erred with its suppression rulings, such error was harmless as to Luis Gonzales and Gilberto Morales." However, what the government fails to recognize is that the standard for harmless error which involves a defendant's constitutional rights implicates the "stricter test for harmless constitutional error rather than … the more relaxed test" for harmless error that does not implicate a defendant's constitutional rights. *See United States v. Melton*, 761 Fed. Appx. 171, 175 (4th Cir. 2019). The government appears to argue that any error was harmless using the "more relaxed test" and does not address the "stricter test for harmless constitutional error." *See id.*

To find harmless constitutional error, a court can only affirm a conviction if the court can find that a fact finder would have had to have found guilt beyond a

reasonable doubt absent the error. *See id.* ("Put another way, the Court will [only] affirm a conviction if 'it is clear that a rational fact finder would have found [the defendant] guilty absent the error.'") "We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 86, 87 (1963); *see also United States v. Garcia-Lagunas*, 835 F.3d 479, 487-88 (4th Cir. 2016). Error that implicates constitutional rights must be "harmless beyond a reasonable doubt, such that it is clear that a rational fact finder would have found [the defendants] guilty absent the error." *United States v. Poole*, 640 F.3d 114, 120 (4th Cir. 2011).

The government cited one case in its argument that the error was harmless to Gonzales and Morales, and that case cited the "more relaxed test" for harmless error, and not the test appropriate here, which would be the "stricter test for harmless constitutional error…." *See Melton*, 761 Fed. Appx. at 175. The government's argument – that there was some evidence outside of the erroneously admitted evidence that could have been sufficient – does not satisfy the standard of review. The government did not argue that the erroneously admitted evidence might not have contributed to the verdict – which is the standard they would need to satisfy to prove that the error was harmless.

The government's argument is that Nelson, Salmeron and Minor-2 all testified to some facts that could have been sufficient. As noted above, that is not the correct standard. In addition, the government ignores the important fact that Nelson and Salmeron were impeached as cooperators that received significant benefits in exchange for their testimony, and that one alleged co-conspirator's conviction was set aside in large part because it found Minor-2's testimony to be not credible. *See Memorandum Opinion and Order*, ECF 558 (filed 6/16/23). The government has not – and cannot – show that Gonzales and Morales "would have" been found guilty on the strength of this testimony.

Since the government did not argue that the jury "*would have found [Gonzales and Morales] guilty*," the government thus does not establish that the error was harmless.[5] Indeed, the government could not have made this argument because the Facebook evidence was so overwhelming that it infected the entire trial. *See Fahy*, 375 U.S. at 91 (The Supreme Court found that constitutional error was not harmless where the evidence was obtained by an illegal search, the evidence was incriminating, and the evidence was used to corroborate the testimony of others). As shown in the Appellants' brief, the amount of Facebook evidence was so large that it clearly

---

[5] The government argues that the error was harmless as to Gonzales as it relates to the charges of substantive sex trafficking and conspiracy, but does not even address whether the error was harmless as to the transportation charge.

infected the entire trial, such that it cannot be said that Gonzalez and Morales "would have" been found guilty without it.

## CONCLUSION

For the above reasons and the reasons stated in Defendant-Appellant's opening brief, this Honorable Court should reverse Defendant-Appellants' convictions and remand the case to the district court for a new trial. For the reasons stated in the opening brief, this Honorable Court should reverse the convictions concerning defendant Gutierrez-Castro and enter a judgment of acquittal as to all counts.

Respectfully submitted,

/s/ Joseph King
Joseph D. King
King, Campbell, Poretz & Mitchell PLLC
118 N. Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
jking@kingcampbell.com
*Counsel for Mr. Moises Zelaya-Veliz*

Donald E. Harris
Harris Law Firm
2800 Eisenhower Ave. Ste. 220
Alexandria, Va 22314
(703) 224-8810
dh@harrisfirmva.com
*Counsel for Mr. Jose Eliezar Molina-Veliz*

Dwight E. Crawley
Counsel for Santos Gutierrez Castro
Law Office of Dwight E. Crawley
1300 I. Street, NW, Suite 400E
Washington, DC 20005
(202) 580-9794
vadclawyer@gmail.com
*Counsel for Mr. Ernesto Santos Gutierrez Castro*

Jeffrey Zimmerman
Jeffrey Zimmerman, PLLC
108 N. Alfred Street
Alexandria, VA 22314
(703) 548-8911
Email: www.zimpacer.com
*Counsel for Mr. Luis Alberto Gonzalez*

Donna L. Biderman
Law Office of Donna Biderman
4015 Chain Bridge Road, Suite 38
Fairfax, Virginia 22030
(703) 966-5434
dbiderman@bidermanlaw.com
*Counsel for Mr. Gilberto Morales*

Christopher Amolsch
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
(703) 969-2214
chrisamolsch@yahoo.com
*Counsel for Mr. Jonathan Rafael Zelaya-Veliz*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*4,270*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

    Dated: August 31, 2023          /s/ Joseph King
    *Counsel for Mr. Moises Zelaya-Veliz*

# CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2023, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Alexandra Z. Bedell
> Maureen C. Cain
> Seth M. Schlessinger
> Cristina C. Stam
> OFFICE OF THE U.S. ATTORNEY
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> (703) 299-3773
>
> *Counsel for Appellee*

/s/ Joseph King
*Counsel for Mr. Moises Zelaya-Veliz*